# CIRCUIT COURT FOR HAMILTON COUNTY
## State of Tennessee



JOHNATHAN WILLIAM ELLISH, §
§
_Plaintiff,_ §
§ No. 22C1318
~v~ §
§
§ **JURY DEMAND**
CITY OF EAST RIDGE, §
§
FORMER OFFICER ANNA SIMMONS, §
§
OFFICER "J. DAVIS," §
(aka James T. Davis), and §
§
OFFICER SAMUEL ROISTACHER, §
§
_Defendants._ §

"You don't say, you silly goose."

(Former Officer Anna Simmons addressing Plaintiff in body-cam video)

## COMPLAINT

NOW COMES Plaintiff, JOHNATHAN WILLIAM ELLISH, by and through his attorney, Robin Ruben Flores, and complaining of Defendants CITY OF EAST RIDGE, FORMER OFFICER ANNA SIMMONS, OFFICER "J. DAVIS" (aka James T. Davis), and OFFICER SAMUEL ROISTACHER, states as follows:

**Introduction:**

1.      This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights secured to Plaintiff by the Fourth, and Fourteenth Amendments to the United States Constitution by the Defendants and for violations of the laws of the State of Tennessee by the individual defendants.

~ 1 ~

ORIGINAL

EXHIBIT
A

2.     Plaintiff avers that the individually named defendants[1], Officer Samuel Roistacher ("Roistacher"), and Former Officer Anna Simmons ("Simmons"), and Officer "J. Davis" ("J. Davis") acted as agents, and law enforcement officers employed by the City of East Ridge ("City") and were at all times relevant to this matter acting under color of law and under color of their offices with the City.

3.     As to "J. Davis," a call to East Ridge Police Dispatch on 12-29-2022 to fully identify this defendant was denied by an operator who stated that he would give out only the first initial, last name and badge number of this Defendant. A search of online records reveals a "James T. Davis" employed by the City of East Ridge on a website that reports date of hire and salary of all East Ridge employees. "J. Davis" is further described as one of the three individually named defendants visible in 2 body-cam videos of the events described herein and is listed as "J. Davis" in two reports of the incident described herein. For further identification, Plaintiff inserts a screen shot of this defendant here as he is seen forcing Plaintiff's face into the jagged rocks:



4.     Plaintiff maintains that the individual defendants committed these violations, further set forth herein, because of policies, customs, practices, and/or procedures of the City.

---

[1] The term, "individual defendants," when used herein, shall refer collectively to Roistacher, Simmons and J. Davis. "Defendants" shall refer to all individually defendants and the City.

5. In addition, Plaintiff avers the individual defendants' acts and omissions subjected Plaintiff to mental anguish, emotional distress, humiliation, and caused injuries to Plaintiff that included partial disfigurement to the Plaintiff's face that required sutures to reattach part of his left nostril, fracture to his nose and severe bruising and abrasions.

**Jurisdiction and Venue:**

6. This is an action to redress the Defendants' deprivation of rights secured to the Plaintiff by the Fourth, and Fourteenth Amendments to the United States Constitution and for violations of Tennessee state law. Thus, as to the § 1983 claims, this Court is vested with original jurisdiction pursuant to the authority stated in Haywood v. Drown, 556 U.S. 729, 731 (2009) and Poling v. Goins, 713 S.W.2d 305, 306 (Tenn. 1986). This Court is vested with original jurisdiction over Plaintiff's state claims pursuant to TENN. CODE ANN. § 16-10-101, et seq.

7. Venue is proper in this Court pursuant to TENN. CODE ANN. § 20-4-102. All acts complained of occurred within Hamilton County.

    a. Plaintiff is currently a resident of Catoosa County, Georgia.

    b. To the best of Plaintiff's knowledge, the individual defendants are residents of Hamilton County, Tennessee, or in the alternative, conducted their primary duties as agents and law enforcement officers for the City within the corporate limits of Hamilton County, Tennessee.

    c. The City is a political sub-division of the State of Tennessee.

    d. All acts averred herein that give rise to this lawsuit happened in Hamilton County, Tennessee.

**The Parties[2]:**

*Plaintiff:*

8.    At all times relevant to this cause of action, Plaintiff is a citizen of the United States and of the State of Georgia and a resident of Catoosa County, Georgia.

*City:*

9.    At all times relevant to this cause of action, the City was a political sub-division of the State of Tennessee organized and existing under the laws of the State of Tennessee.

      a.    The City finances its law enforcement department identified and averred as the East Ridge Police Department ("department") and provides rules and regulations for the operation of the department.

      b.    The City provides oversight of the hiring, training, discipline, supervision, and retention of all personnel in its department.

10.    At all times relevant to this cause of action, the City is responsible for the creation and maintenance of its department, which is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee as to:

      a.    Ensure and oversee the safe and humane treatment of all persons taken into custody of its law enforcement employees, and to ensure they do not unreasonably seize persons.

      b.    The training and certification of its law enforcement employees in all areas of law enforcement, including but not limited to arrests of persons, and when to identify persons in mental health crisis and how to deal with such persons.

---

[2] Plaintiff has described the individual defendants in previous paragraphs.

~ 4 ~

   c.  Properly and promptly investigate misconduct by its law enforcement employees.

11.  Plaintiff brings this action against the City.

12.  At all times relevant to this cause of action, the City employed the individual defendants. These individual defendants acted under the color of their respective offices and under the color of law, statute, ordinance, regulation, custom, or usage of the City. In addition:

   a.  At all times relevant to this cause of action, these individual defendants acted in their official capacities as employees for the City as defined under TENN. CODE ANN. § 29-20-102.

   b.  Plaintiff also sues these individual defendants in their individual capacities.

**Factual Basis**
***Individual Defendants' Actions:***

13.  On October 3, 2022, at about 3:28 am, Plaintiff arrived at Parkridge Hospital ("Parkridge") located in East Ridge, Tennessee by ambulance.

14.  The purpose of the transport of Plaintiff to Parkridge by ambulance was for "shortness of breath," and "chest pain – unspecified."

15.  While at Parkridge, and upon examination, Bryan England, MD ("Dr. England") signed an "Emergency Detention for Immediate Examination for Emergency Admission" for "emergency diagnosis, evaluation, and treatment" pursuant to TENN. CODE ANN. § 33-6-403 based upon the doctor's observation that the Plaintiff was "intoxicated, depressed, verbalized suicidal thoughts." Plaintiff was therefore a person in mental health crisis.

16.  TENN. CODE ANN. § 33-6-403 reads exactly as follows:

~ 5 ~

TENN. CODE ANN. § 33-6-403 ADMISSION TO TREATMENT FACILITY

IF AND ONLY IF

> (1) a person has a mental illness or serious emotional disturbance, AND
>
> (2) the person poses an immediate substantial likelihood of serious harm, under § 33-6-501, because of the mental illness or serious emotional disturbance, AND
>
> (3) the person needs care, training, or treatment because of the mental illness or serious emotional disturbance, AND
>
> (4) all available less drastic alternatives to placement in a hospital or treatment resource are unsuitable to meet the needs of the person,

THEN

> (5) the person may be admitted and ***detained by a hospital*** or treatment resource for emergency diagnosis, evaluation, and treatment under this part.

17.   Plaintiff refused treatment and departed Parkridge on foot.

18.   On the same date, at about 5:33 am, J. Davis, Simmons and Roistacher initially encountered Plaintiff as he walked on Spring Creek Road.

19.   Simmons and Roistacher detained Plaintiff, and Plaintiff engaged in a conversation with Simmons and Roistacher.

20.   Simmons told Plaintiff that he had a "CON" that prevented Plaintiff from leaving Parkridge.

21.   For about one minute and seven seconds, Plaintiff, Simmons and Roistacher discussed why Plaintiff could not leave Parkridge.

22.   During this time, Roistacher appeared to become angry, and he removed his eyeglasses and placed them in his pocket.

23.   Plaintiff stated that he was going home and Simmons and Roistacher said that he was not going home.

24.   Without warning, Roistacher grabbed Plaintiff's left arm and placed a handcuff on Plaintiff.

~ 6 ~

25.　Simmons grabbed Plaintiff without warning nor saying anything to Plaintiff.

26.　J. Davis approached Plaintiff.

27.　J. Davis, without warning, grabbed Plaintiff in a bear hug and slammed Plaintiff hard onto a bed of jagged large rocks.

28.　Simmons and J. Davis rolled Plaintiff onto his face. Plaintiff told the individual defendants, "you ain't got to hit on me," but J. Davis forced his left forearm into the right side of Plaintiff neck and face, and ground Plaintiff's left side of his face into the jagged edges of the large rocks, which partially tore Plaintiff's left nostril from his nose and caused further injuries to Plaintiff's face, and the force J. Davis and Simmons used caused injuries to Plaintiff's arms.

29.　A sample of the injuries are seen in the following photos.

30.　[Photos]



31.　J. Davis told Plaintiff to get on his stomach, and despite Plaintiff telling the individual defendants that he would do so and was trying, Roistacher yelled "taser taser," pointed his taser at Plaintiff as Plaintiff was still laying on the rocks and threatened Plaintiff with the taser. Plaintiff told the individual defendants he was trying to find his glasses, and Roistacher

~ 7 ~

said Plaintiff's glasses were, "busted." J. Davis and Roistacher gave Plaintiff conflicting commands at the same time (put your hands behind your back! / get on your stomach!).

32.    Simmons giggled as she and Davis used two sets of cuffs to handcuff Plaintiff's hands behind his back.

33.    Plaintiff told the individual defendants that his arms would not "reach back there," and Roistacher said, "They do now!" as Simmons and J. Davis painfully forced Plaintiff's hands behind his back.

34.    As Plaintiff sat bleeding at the individual defendants' feet, he asked if they could, "ease up on the cuffs," and Simmons and Roistacher refused to grant Plaintiff the relief for several minutes. Simmons further taunted Plaintiff by calling him a "silly goose."

35.    As J. Davis and Roistacher loosened the handcuffs on Plaintiff, Plaintiff stated, "I got my ass whipped," and Roistacher admitted, "By a girl." Simmons said in reply to another comment about the abuse, "I hate that for you kid."

36.    Plaintiff further told Roistacher that he did not want to do anything "to get my ass whipped," and Roistacher replied, "Well you did."

37.    Plaintiff told Simmons, "you are one badass lady," and Roistacher admitted, "she is."

38.    J. Davis and Simmons then spoke of Plaintiff as a "character" while they grinned and laughed.

39.    Roistacher placed Plaintiff into his patrol car to take Plaintiff to Parkridge.

40.    Simmons said to Roistacher, "man you pulled that taser out .. I was I got tased" and then Simmons giggled and laughed.

41.    Roistacher deposited Plaintiff at Parkridge.

42.     There were no criminal charges made against Plaintiff by any individual defendant.

43.     However, Roistacher wrote an incident report: "Ellish was very bloody, more than would have been expected, until it was learned, from the ER staff, Ellish is on a very strong blood thinner."

**Factual Basis**
***East Ridge Policies/Customs:***

44.     On information and belief, Plaintiff's unlawful treatment at the hands of the individual defendants was not unique, but rather a part of a policy and/or custom in place that encouraged, condoned and/or ratified the practice of bringing false claims against citizens, using and threatening unlawful force to seize citizens, conspiring to violate the civil rights of citizens, and seizing citizens without probable cause.

45.     In events where City police officers made unreasonable seizures of citizens and brought false criminal charges against the same persons, all of which resulted in the dismissal of criminal charges brought against the citizens, no one in a supervisory or internal affairs role from the City ever contacted the victims to conduct any form of internal affairs investigation. Three examples are incidents involving Ronald Cummins, Angel Sherrard and her children, and Kadron Locklin.

46.     In the Sherrard matter, Simmons was seen abusing Angel Sherrard and using abusive and foul language toward Angel Sherrard and her minor daughter. All criminal charges the City officers brought against Angel Sherrard and her adult son (who was recording the Sherrard incident, but was seized by Teddy Dyer and charged with misdemeanor[s]) were dismissed by the State of Tennessee.

~ 9 ~

47. Although the Sherrard incident happened in 2021, it was not until December 2022 (almost a year later) that the City fired Simmons for excessive force and sleeping on the job (in an incident unrelated to the Sherrard matter), as reported in local media stories.

48. In the Locklin matter, where Roistacher used foul language and unnecessary force by threats of using a taser on a compliant Locklin, the State of Tennessee dismissed all criminal charges against Locklin.

49. The City did not discipline Roistacher until after the dismissal of the criminal charges against Locklin and after video of his misconduct emerged in local media reports. Furthermore, the City gave very minimal discipline to Roistacher, which included Roistacher to attend anger management lessons.

50. That is not all. Police Chief Stan Allen ("Allen") made very public comments about another incident involving City officers:

      a.    Video of an interaction between East Ridge police and a black male identified as Anthony Wright ("Wright") shows what appears to be East Ridge police using unreasonable force upon Wright.

      b.    Allen made public comments to News Channel 9 in support of the officers almost the very next day, well short of any time to conduct a meaningful internal affairs investigation.

      c.    Allen further stated to News Channel 9 the following about Matthew Gilbride, a white male who recorded the incident:

*"The behavior of the guy that was taking the video was making things worse. And people are absolutely allowed to video, police officers doing their jobs, as long as they don't interfere."*

~ 10 ~

d.     Taken as true Allen's very public comments reveals that he will support his officers regarding police misconduct without first investigating. Allen's comments about Gilbride reveals a mentality of the head of the department that those who record police misconduct are somehow to blame for the actions of abusive police officers.

e.     To be sure, Gilbride was standing away from the incident while making comments to the police to handcuff Wright and not taser Wright. At no time in the video did Gilbride ever approach or actively "interfere" with the officers as Allen stated in the News Channel 9 interview.

51.     In addition, there exists other evidence that shows the City has a practice of condoning police misconduct. On August 3, 2022, office staff of Plaintiff's counsel received and opened an unsolicited letter signed by "Night Shift" and its envelope bearing the address of the East Ridge Police Department. The contents of the letter include, but is not limited to the following claims about the arrest of Ronald Cummins:

a.     **"The following day or so later,** Officer Dyer watched the body camera footage of the arrest with Assistant Chief Clint Uselton in AC Usleton's office."

b.     "The body camera recordings are hosted by Motorola, and each member of administration can log into the system to review videos. Upon doing so, Motorola logs and date stamps any review of downloaded footage and documents who views it."

c.     "Assistant Chief Uselton was aware of Officer Dyer's bogus arrest of Mr. Cummins shortly after it occurred, and he took no action. By doing so he approved of this type of behavior **which currently infests the department."**

~ 11 ~

52.     In addition to the video/audio recordings in the Cummins, Sherrard, Locklin, and Wright incidents, there is another video incident involving East Ridge officers and an arrestee. As with the Cummins, Wright, and Sherrard events that happened in 2021, an incident involving William Cody Bell ("Bell") emerged on News Channel 9, and this Bell event happened in 2021.

53.     Video of the event with Bell showed City officers giving conflicting commands to Bell, and despite his attempts to comply with the officers (including having his hands up), one officer used a taser on Bell and another used **both hands** to strangle Bell and pull him from the vehicle.

     a.     TENN. CODE ANN. § 38-13-102 defines the Class C Felony of Aggravated Assault (in part) as intentionally or knowingly committing an assault and the assault involves the use of strangulation or attempted strangulation.

     b.     The same statute defined "strangulation" as meaning intentionally or knowingly impeding normal breathing or circulation of the blood by applying pressure to the throat or neck or by blocking the nose and mouth of another person, regardless of whether that conduct results in any visible injury or whether the person has any intent to kill or protractedly injure the victim.

54.     In the same Bell video, no other City officer intervened to stop the strangulation.

55.     As with the Wright incident, Allen made public comments to News Channel 9 wherein he defended the abuse the officers inflicted upon Bell. Allen made these comments before having time to conduct any meaningful investigation of the officers' actions.

~ 12 ~

56.     Additionally, the City was on notice (either actual or constructive) that its officers conducted the acts of violence and excessive force against the Plaintiff in this matter, Cummins, Wright, the Sherrard family, Locklin, and Bell.

57.     Past Department policies on body worn cameras required the following of supervisors:

> a.      "At least on a monthly basis, supervisors will randomly review BWC recordings to ensure that the equipment is operating properly and that officers are using the devices appropriately and in accordance with policy and to identify any areas in which additionally training or guidance is required."

58.     Roistacher and J. Davis remain on duty without meaningful repercussion, and thus it appears that the City has condoned the unlawful actions as set forth herein. This lack of supervision and discipline is tantamount to deliberate indifference of the rights of the Plaintiff and is a direct and proximate cause of the Plaintiff's damages, humiliation, and his claims as set forth in this Complaint. The only reason Simmons seems to have been fired from her position by the City was on matters not related to the individual defendant's abuse of Plaintiff.

> a.      To be sure, no one in a supervisory or internal affairs role from the City ever contacted Cummins, the Sherrard family, Locklin, Wright, Bell, and Plaintiff to conduct any form of internal affairs investigation, even after the dismissal of the criminal charges brought by the City officers in those incidents against Cummins, the Sherrard family, and Locklin,.

> b.      Allen, a supervisor and chief of police, failed to take any corrective action with Roistacher in the Locklin matter until confronted with the revelations of the incident by WTVC.

~ 13 ~

c.  As noted *supra*, the City failed to take any action against Simmons regarding the Sherrard matter until **nearly one year later**.

d.  Additionally, the City's own videos identified in this Complaint show acts of violence, abuse, and belittling conduct by its officers.

e.  The Department's own policies require reviews of the video footage, which reveals supervisors knew of the events and took no action.

f.  As noted in the "Night Shift" letter, the command of the department was aware that its officers have a practice of violating the rights of citizens.

## COUNT ONE:
## UNREASONABLE SEIZURE BY EXCESSIVE FORCE
## (FOURTH AND FOURTEENTH AMENDMENTS)

## VIOLATION OF CIVIL RIGHTS UNDER
## COLOR OF LAW 42 U.S.C. §1983

59.  Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

60.  The force displayed by the individual defendants amounted to unlawful force that carried a high risk of causing serious and life-threatening bodily harm, was unnecessary and unreasonable under the circumstances and was the direct and proximate cause of Plaintiff's deprivation of his liberty and his injuries and mental anguish.

61.  To be sure, "J. Davis" had no reason to bear-hug and slam the elderly Plaintiff onto the jagged rocks and to do so without warning. Roistacher, as seen with his unnecessary use of a taser in the Locklin matter, showed his propensity to needlessly resort to such an escalation of unreasonable force as he did with the Plaintiff in this matter.

62.  No reasonable law enforcement officer would have acted in this manner.

~ 14 ~

63.     The laughter of Simmons, and the silly comments by the individual defendants revealed that Plaintiff posed no threat to any individual defendant.

64.     The sudden attack upon Plaintiff without warning by the individual defendants, after only about one minute and seven seconds of communication with the Plaintiff was an unnecessary escalation of force when the only reason why these defendants detained Plaintiff was that he walked away from a medical facility where he refused treatment.

      a.     The individual defendants, knowing that the Plaintiff and a "certificate of need" for mental health treatment failed to exercise restraint in dealing with someone who was in crisis, and failed to contact a crisis intervention team member.

      b.     Rather, they reflexively and without warning resorted to unnecessary violence.

65.     The City had a non-delegable duty to ensure that it properly trained and supervised officers to refrain from seizing citizens with excessive force.

66.     The lack of oversight of the City and Stan Allen's public comments as averred herein, created and helped to maintain an atmosphere that the individual defendants could act in the manner set forth herein, and thus not be punished in any significant way, if at all.

67.     The violence of the individual defendants, their admissions of violence against the Plaintiff, their laughter and sophomoric comments about the Plaintiff after they abused Plaintiff, all caught on video that the City was required to review, and the subsequent lack of any investigation by the City further created an atmosphere within the department that such misconduct is condoned and ratified by the City. To be sure, the individual defendants knew

~ 15 ~

their body-cams would record their antics, but they ***still*** behaved in the manner stated in this Complaint.

68.     The City's failures to discipline Simmons until a year later after the Sherrard matter, and the slight discipline of Roistacher, further created an atmosphere within the department that such misconduct is condoned and ratified by the City.

69.     The City's failures as noted in the prior incidents to investigate and discipline Simmons and Roistacher (until either the local media revealed their misconduct), and the failure to take action against the offending officers in the other examples Plaintiff has averred in this Complaint was the direct and proximate cause of Plaintiff's deprivation of his liberty by the use of excessive force.

70.     The individual defendants acted under color of law and their intentional acts along with the deliberate indifference of the City deprived the Plaintiff of the right secured to him under the Fourth and Fourteenth Amendments to United States Constitution to be free from unreasonable seizures of persons by excessive force without Due Process of Law.

71.     Plaintiff sues the City and the individual defendants under this Count.

**COUNT TWO:**
**FAILURE TO PROTECT AND RENDER AID**
**(FOURTEENTH AMENDMENT)**

**VIOLATION OF CIVIL RIGHTS UNDER**
**COLOR OF LAW 42 U.S.C. §1983**

72.     Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

73.     Each individual defendant had non-delegable duties to intervene and prevent his/her fellow defendant from using excessive force against the Plaintiff.

~ 16 ~

74.     The individual defendants had non-delegable duties to report the misconduct of their fellow defendants to the command staff of the City Police Department, and there is no indication that any individual defendant reported this misconduct to anyone within the command staff.

75.     Once the Plaintiff was in the joint custody of the individual defendants there existed a special relationship between the Plaintiff and the individual defendants, and they had a duty to protect the Plaintiff.

76.     Once Plaintiff was in the custody of the individual defendants, they had an affirmative duty to protect Plaintiff from injury from one another, and to report the misconduct of their fellow co-defendant to those charged with the oversight of officer conduct. The individual defendants did not make any such reports as can be gleaned from the facts set forth in this Complaint.

77.     The City had a non-delegable duty to ensure that it properly trained and supervised officers to intervene when fellow officers used excessive force. The City also had an affirmative duty to ensure that its officers were properly trained in the use of force.

78.     The failure of the individual defendants to intervene and stop the other in their actions as set forth herein and their failure to report the misconduct of their fellow officer constituted a joint effort in which they participated as equals.

79.     The lack of training, and supervision of the City and Stan Allen's public comments as averred herein, and the minimal discipline against Roistacher and the delayed discipline of Simmons created and *helps to maintain* an atmosphere that the individual defendants could act in the manner set forth herein, and thus not be punished in any significant way, if at all.

~ 17 ~

80.     The individual defendants acted under color of law and their negligence and intentional acts along with the deliberate indifference of the City deprived the Plaintiff of his rights secured to him under the Fourteenth Amendment to United States Constitution to be free from harm while in the custody of the individual defendants and the City.

81.     Plaintiff sues the City and the individual defendants under this Count.

## COUNT THREE:
## CONSPIRACY TO VIOLATE CIVIL RIGHTS

### VIOLATION OF CIVIL RIGHTS UNDER
### COLOR OF LAW 42 U.S.C. §1983

82.     Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

83.     The joint actions and omissions of the individual defendants as set forth herein resulted in the deprivation of Plaintiff's rights to be free from unreasonable seizures by excessive and to be free from deprivation of Due Process and to protect the Plaintiff.

84.     No reasonable officer would act in such a manner.

85.     The City had a non-delegable duty to ensure that it properly trained and supervised officers to refrain from joint violations of civil rights by its law enforcement employees.

86.     The lack of oversight, supervision, and discipline as stated in the prior paragraphs and counts and incorporated herein created and helps to maintain an atmosphere that the individual defendants could act in the manner set forth herein, and thus not be punished in any significant way, if at all.

87.     The individual defendants acted under color of law and their negligence and intentional acts constituted a conspiracy to violate the Plaintiff's civil rights as averred herein.

~ 18 ~

The City's deliberate indifference as averred herein was the driving force behind the individual defendants' joint efforts as averred herein.

88.     Plaintiff sues the City and the individual defendants under this Count.

## COUNT FOUR:
## ASSAULT (STATE COMMON LAW)

89.     Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

90.     The individual defendants' acts as averred in this Complaint, constituted an assault on Plaintiff.

91.     No reasonable officer would act in such a manner.

92.     Plaintiff sues individual defendants under this Count.

## COUNT FIVE:
## BATTERY (STATE COMMON LAW)

93.     Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

94.     The individual defendants' acts as averred in this Complaint, constituted a battery on Plaintiff.

95.     No reasonable officer would act in such a manner.

96.     Plaintiff sues individual defendants under this Count.

## COUNT SIX:
## CONVERSION (STATE COMMON LAW)

97.     Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

98.     The individual defendants' joint acts as averred resulted in the destruction of Plaintiff's glasses, which rendered them unusable.

~ 19 ~

99.    No reasonable officer would act in such a manner.

100.    Plaintiff sues the individual defendants under this Count.

## COUNT SEVEN:
## CIVIL CONSPIRACY (STATE COMMON LAW)

101.    Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

102.    The individual defendants' joint acts as averred constituted a civil conspiracy against Plaintiff.

103.    No reasonable officer would engage in such a conspiracy.

104.    Plaintiff sues the individual defendants under this Count.

WHEREFORE, the Plaintiff demands judgment against the Defendants and requests the following relief:

a.    The omissions of the City constituted willful and wanton indifference to and with deliberate disregard for the constitutional civil rights of the Plaintiffs. Thus, as to the City the Plaintiff is entitled to actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

b.    The individual defendants committed their acts against Plaintiff with actual malice toward the Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional civil rights of the Plaintiff. Thus, as to the individual defendants, Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

c.    Plaintiff prays the Court to enter judgment against the Defendants and to award him compensatory damages in the amount of TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($250,000), and to award said damages joint and several.

~ 20 ~

d.   Plaintiff prays the Court to enter judgment against the individual defendants and to award him punitive damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000), and to award said damages joint and several.

e.   Plaintiff prays the Court award costs, and discretionary costs.

f.   Plaintiff prays for any other relief the Court may deem fit and proper.

g.   Plaintiff prays for any other relief the Court may deem fit and proper pursuant to 42 U.S.C. § 1988, and

h.   Allow a jury trial on all issues.

Respectfully submitted,

By: _____

**ROBIN RUBEN FLORES**
**TENN. BPR #20751**
**GA. STATE BAR #200745**
Attorney for Plaintiff
4110-A Brainerd Road
Chattanooga, TN 37411
(423) 267-1575
robin@robinfloreslaw.com

~ 21 ~

## CIRCUIT COURT FOR HAMILTON COUNTY
### State of Tennessee

| | | |
|---|---|---|
| JOHNATHAN WILLIAM ELLISH, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | No. 22C1318 |
| ~v~ | § | |
| | § | **JURY DEMAND** |
| CITY OF EAST RIDGE, et al., | § | |
| | § | |
| *Defendants.* | § | |

### AFFIDAVIT OF SERVICE

1. I am the affiant, Allen Huggins, and base this affidavit upon first-hand information. I am competent to make this affidavit.

2. On December 30, 2022, a Complaint was filed and a Summons was issued for defendant, City of East Ridge, c/o Mark Litchford, City Attorney.

3. On January 3, 2023, I personally served a copy of the Summons and complaint to defendant City of East Ridge, c/o Mark Litchford, City Attorney at 5726 Marlin Road, Suite 107, Chattanooga, TN 37411.

**AFFIANT STATES NOTHING FURTHER.**

STATE OF TENNESSEE )
COUNTY OF HAMILTON )

I, Allen Huggins, first being duly sworn, do hereby make solemn oath that the facts contained in this affidavit are true to the best of my knowledge, information and belief. This 5 day of January, 2023

Allen Huggins, RCSI
8829 Snow Hill Road
Ooltewah, TN 37363

Sworn to before me this 5
day of January, 2023.

_____ Notary Public
My commission expires:

DULIE C. BOWERS
STATE OF TENNESSEE
NOTARY PUBLIC
HAMILTON COUNTY

# CIRCUIT COURT FOR HAMILTON COUNTY
## State of Tennessee

JOHNATHAN WILLIAM ELLISH,

           *Plaintiff,*

~v~

CITY OF EAST RIDGE, et al.,

           *Defendants.*

§
§
§
§
§
§
§
§
§

No. 22C1318

**JURY DEMAND**

*FILED IN OFFICE*
*2022 DEC 30 AM 10: 52*
*LARRY L. HENRY, CLERK*
*BY ___ DC*

## SUMMONS

**To:** **CITY OF EAST RIDGE**
c/o Mark Litchford,
City Attorney
5726 Marlin Road, Suite 107
Chattanooga, TN 37411

      You are hereby summoned to answer and make defense to a Bill of Complaint, which has been filed in the Circuit Court for Hamilton County, Tennessee in the above styled case. Your defense to this Complaint must be filed in the office of the Clerk of Circuit Court for Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

WITNESSED and issued this the 30ᵗʰ day of December , 2022

           **LARRY HENRY, CLERK**

           BY: H. Novkov
                        DEPUTY CLERK

Attorneys for Plaintiff: ROBIN RUBEN FLORES
           4110 BRAINERD ROAD, CHATTANOOGA, TN 37411

Plaintiff's Address: _____

      Received this _____ day of _____, 20___.

           /S/ _____
                   DEPUTY SHERIFF

*SERVICE RETURN*

D1

**CIRCUIT COURT FOR HAMILTON COUNTY**
**State of Tennessee**

JOHNATHAN WILLIAM ELLISH,                     §
                                              §
                    *Plaintiff,*              §
                                              §
~v~                                           §          No. 22C1318
                                              §
CITY OF EAST RIDGE, et al.,                   §          **JURY DEMAND**
                                              §
                    *Defendants.*             §



## AFFIDAVIT OF SERVICE

1.     I am the affiant, Allen Huggins, and base this affidavit upon first-hand information. I am competent to make this affidavit.

2.     On December 30, 2022, a Complaint was filed and a Summons was issued for defendant, Former Officer Anna Simmons.

3.     On January 3, 2023, I personally served a copy of the Summons and complaint to defendant former officer Anna Simmons who now works for Bradley County Sheriff's Office, 2290 Blythe Avenue, SE, Cleveland, TN 37311.

4.     Lieutenant Christian accept service for Anna Simmons while Simmons was in class. Lieutenant Christian is authorized to accept service for Anna Simmons.

**AFFIANT STATES NOTHING FURTHER.**

STATE OF TENNESSEE )
COUNTY OF HAMILTON )

     I, Allen Huggins, first being duly sworn, do hereby make solemn oath that the facts contained in this affidavit are true to the best of my knowledge, information and belief. This **5** day of January, 2023

                         Allen Huggins, RCSI
                         8829 Snow Hill Road
                         Ooltewah, TN 37363

Sworn to before me this **5**
day of January, 2023.

_____ Notary Public
My commission expires: _____

**CIRCUIT COURT FOR HAMILTON COUNTY**
**State of Tennessee**

JOHNATHAN WILLIAM ELLISH,                  §
                                           §
                    *Plaintiff,*           §
                                           §        No. 22C1318
~v~                                        §
                                           §        **JURY DEMAND**
CITY OF EAST RIDGE, et al.,                §
                                           §
                    *Defendants.*          §

## SUMMONS

**To:**   Former Officer Anna Simmons
          Bradley County Sheriff's Office

        You are hereby summoned to answer and make defense to a Bill of Complaint, which has
been filed in the Circuit Court for Hamilton County, Tennessee in the above styled case. Your
defense to this Complaint must be filed in the office of the Clerk of Circuit Court for Hamilton
County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to
do so, judgment by default will be taken against you for the relief demanded in the Complaint.

WITNESSED and issued this the 30th day of December, 2022

                    **LARRY HENRY, CLERK**

                    BY: _____
                         DEPUTY CLERK


Attorneys for Plaintiff: ROBIN RUBEN FLORES
_____4110 BRAINERD ROAD, CHATTANOOGA, TN 37411_____

Plaintiff's Address: _____

        Received this _____ day of _____, 20___.


                    /S/ _____
                         DEPUTY SHERIFF

JOHNATHAN WILLIAM ELLISH, §
§
Plaintiff, §
§
~v~ No. 22C1318
§
CITY OF EAST RIDGE, et al., §
§ **JURY DEMAND**
§
Defendants. §

## AFFIDAVIT OF SERVICE

1.  I am the affiant, Allen Huggins, and base this affidavit upon first-hand information. I am competent to make this affidavit.

2.  On December 30, 2022, a Complaint was filed and a Summons was issued for defendant, Officer J. Davis, aka James T. Davis, East Ridge Police Dept.

3.  On January 3, 2023, I personally served a copy of the Summons and complaint to defendant Officer James T. Davis with East Ridge Police Department at 4214 Ringgold Road, East Ridge, TN 37412.

**AFFIANT STATES NOTHING FURTHER.**

STATE OF TENNESSEE )
COUNTY OF HAMILTON )

I, Allen Huggins, first being duly sworn, do hereby make solemn oath that the facts contained in this affidavit are true to the best of my knowledge, information and belief. This 5 day of January, 2023

Allen Huggins, RCSI
8829 Snow Hill Road
Ooltewah, TN 37363

Sworn to before me this 5
day of January, 2023.
_____ Notary Public
My commission expires: 7-16-24

JOHNATHAN WILLIAM ELLISH,

§
§
Plaintiff,
§
§
No. 22C1318
~v~
§
§
**JURY DEMAND**
CITY OF EAST RIDGE, et al.,
§
§
Defendants.
§

*FILED IN OFFICE*
*2022 DEC 30 AM 10:50*
*LARRY L. HENRY, CLERK*
*BY _____ D.C.*

## SUMMONS

**To:** Officer "J. Davis," (aka James T. Davis) Further identified by photo
East Ridge Police Department



You are hereby summoned to answer and make defense to a Bill of Complaint, which has been filed in the Circuit Court for Hamilton County, Tennessee in the above styled case. Your defense to this Complaint must be filed in the office of the Clerk of Circuit Court for Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

WITNESSED and issued this the 30th day of December, 2022.

**LARRY HENRY, CLERK**

BY: _H. novkov_
**DEPUTY CLERK**

Attorneys for Plaintiff: ROBIN RUBEN FLORES
4110 BRAINERD ROAD, CHATTANOOGA, TN 37411

Plaintiff's Address: _____

Received this _____ day of _____, 20___.

/S/ _____
**DEPUTY SHERIFF**

*SERVICE RETURN*